# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: 21-4008 MJ |
| v. | ELECTRONIC CRIMINAL COMPLAINT |
| JEDIDIAH NOBLE | |

I, the undersigned, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about January 13, 2021, in the District of Arizona, within the confines of the Navajo Nation Indian Reservation, Indian Country, the defendant, JEDIDIAH NOBLE, an Indian, did unlawfully kill R.S., with premeditation and with malice aforethought.

In violation of Title 18, United States Code, Sections 1153 and 1111.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

REVIEWED BY: AUSA Jennifer E. LaGrange
JENNIFER LAGRANGE Digitally signed by JENNIFER LAGRANGE Date: 2021.01.14 12:28:15 -07'00'

Michael A. Carter, Special Agent, FBI
Complainant's Name and Title

MICHAEL CARTER Digitally signed by MICHAEL CARTER Date: 2021.01.14 12:40:29 -07'00'
Complainant's Signature    Date

January 14, 2021
Date

Flagstaff, Arizona
City and State

Sworn by telephone ✓

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

## ELECTRONICALLY SUBMITTED AFFIDAVIT OF PROBABLE CAUSE

I, Special Agent Michael A. Carter, being duly sworn, state the following:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since August 2016. I am currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division. Prior to becoming a Special Agent with the FBI, I was a Police Officer for the Johnson City Police Department in Johnson City, Tennessee, for approximately five years and three months. Throughout my law enforcement career, I have received training on numerous investigative topics, and have experience investigating complex criminal violations of law. I have been the affiant on numerous state and federal affidavits. In the course of my duties, I am charged with investigating crimes occurring on the Navajo Nation Indian Reservation within the Federal District of Arizona. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint, and does not set forth all of my knowledge about this matter.

3. This case involves a violation of 18 U.S.C. § 1153: Offenses committed within Indian Country as follows: 18 U.S.C. § 1111 – First Degree Murder. The events described in this document occurred within the confines of the Navajo Nation Indian Reservation, in the District of Arizona, unless otherwise described in this Affidavit.

4. On January 13, 2021, at approximately 8:50 p.m., Elizabeth Noble (hereinafter Elizabeth) placed a 911 call to report a stabbing in Ganado, Arizona. Officers from the Navajo Nation Police Department (NNPD) in Window Rock were dispatched to the area. Responding officers made contact with Elizabeth a short distance away from the location of the stabbing. Elizabeth informed officers that her grandmother, R.W., had been stabbed by her (Elizabeth's) brother, JEDIDIAH NOBLE. Officers followed Elizabeth to the location of the incident.

5. On arrival, NNPD officers began efforts to locate JEDIDIAH NOBLE. They made contact with him at the front door of the residence and began issuing verbal commands for him to exit the residence. JEDIDIAH NOBLE complied with the orders, exited the residence, and was detained by NNPD officers. During this initial contact, officers observed that JEDIDIAH NOBLE had a large amount of blood on his clothing and hands. A cursory check of the area revealed a deceased female, R.W., in the living room of the home. R.W. had multiple puncture wounds to her body, and a doctor (Dr. Veltkemp) officially pronounced her dead at 9:38 p.m., by telephone.

6. I learned of the incident from NNPD Criminal Investigator (CI) Alvernon Tsosie, and responded to the scene. I arrived at approximately 10:46 p.m. I met with CI Tsosie and several NNPD officers, including those that responded to the initial call. JEDIDIAH NOBLE was detained in a NNPD police vehicle, and NNPD officers had secured the scene. JEDIDIAH NOBLE was removed from the vehicle, and I observed blood stains on his clothing—very noticeably on his khaki pants. I also observed that his

hands were covered in blood. I asked JEDIDIAH NOBLE for consent to take a swab of blood from his hands, and some fingernail clippings. He provided consent.

7. I ascertained that the residence belonged to R.W., and that the residents were R.W., Elizabeth Noble, and Larson Shephard (hereinafter Larson). Elizabeth and Larson provided consent to search the residence.

8. During the search, we discovered the deceased body of R.W. on the floor of the living room. There was a large amount of blood in multiple areas surrounding around her body. Her body had numerous, obvious puncture wounds on her chest, abdomen, hands, arms, back, and face. I estimated that there were 40-50 puncture wounds on her body. Near her body, on a table, was a silver knife with a brown wooden handle that was covered in blood.

9. As we continued the search, other NNPD officers transported JEDIDIAH NOBLE to the Navajo Department of Corrections (NDC) facility in Window Rock, Arizona, and booked him on tribal charges. Immediately after we finished searching the residence, CI Tsosie and I travelled to the NDC to interview JEDIDIAH NOBLE. The drive took approximately 30 minutes. At the NDC facility, I advised JEDIDIAH NOBLE of his Miranda rights, he signed FBI form FD-395, Advice of Rights, and he agreed to waive his rights and provide a statement.

10. We began the interview on January 14, 2021 at approximately 2:35 a.m. JEDIDIAH NOBLE denied being under the influence of alcohol or drugs. He provided his Navajo tribal census number, indicating that he is an Indian. I am in the process of requesting Navajo Certificates of Indian Blood for him and R.W.

11. JEDIDIAH NOBLE admitted that he stabbed R.W. He said "I murdered my grandma." He repeatedly said that he snapped and started stabbing her for no reason. He said that the knife he used during the stabbing was made of stainless steel and had a brown wooden handle. He called it a "peeling" knife, said that he got it from a table in the living room, and that he knew it was common for R.W. to keep the knife there. (This description is consistent with the knife located near R.W.'s deceased body, which was covered in blood.) JEDIDIAH NOBLE described how he had stabbed R.W., and used his hands to point to places on his own body to indicate where he had stabbed her. I asked JEDIDIAH NOBLE how many times he believed that he stabbed his grandmother, and he responded "maybe 53." JEDIDIAH NOBLE said that R.W. was yelling out for Liz. CI Tsosie asked JEDIDIAH NOBLE what he had been feeling during the stabbing. He said "nothing." I later asked JEDIDIAH NOBLE what he was feeling as we sat there, at the end of the interview, and he responded "no remorse."

12. JEDIDIAH NOBLE changed some minor details throughout the interview. For example, he initially claimed that he lived at the residence with his grandmother, but later said that he lived with his girlfriend in Rough Rock, and was only temporarily staying with his grandmother because of an argument with his girlfriend the night before. He also provided many details of the stabbing that were consistent with the victim's injuries, the physical evidence, and other eyewitness testimony. He detailed the knife, where it was located, how he stabbed R.W., where he started stabbing her, having flipped her over to continue stabbing her, and the amount of times he stabbed her.

13. After interviewing JEDIDIAH NOBLE, CI Tsosie and I travelled back to Ganado, and then to the Burnside area, to interview Elizabeth Nobel and Larson Shephard. Elizabeth said that, before the stabbing, she had been in her bedroom with Larson. R.W. and JEDIDIAH NOBLE were in the living room watching television. She could hear them talking to one another, and she did not hear arguing between the two. Suddenly, a commotion broke out, and Elizabeth left her bedroom to see what was going on. When she went into the living room, she observed JEDIDIAH NOBLE repeatedly stabbing R.W., she thought in the chest. She then saw JEDIDIAH NOBLE pull R.W. into his lap, and he continued to stab her. JEDIDIAH NOBLE saw Elizabeth, Elizabeth was afraid for her life, and she fled the residence to call 911. She then called Larson, who was still in the house, and told him to get out. During the stabbing, Elizabeth had heard her grandmother say "help me, help me."

14. CI Tsosie and I interviewed Larson Shephard. He had not heard the commotion, but he also explained that he has hearing problems. After receiving Elizabeth's call, he exited the residence.

//

//

//

//

15.     Based on the foregoing, I believe that there is probable cause to believe that JEDIDIAH NOBLE committed one count of First Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

MICHAEL CARTER
Digitally signed by MICHAEL CARTER
Date: 2021.01.14 12:38:42 -07'00'

_____                    _____
Michael A. Carter                                                          Date
Special Agent, FBI

✓ SWORN BY TELEPHONE

SWORN AND SUBSCRIBED to before me this 14th day of January, 2021.

_____                    January 14, 2021 at 2:42pm
Honorable Camille D. Bibles                                    Date
United States Magistrate Judge

6